IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

CHAD GRISWOLD,

                **Plaintiff,**

vs.                                          Civ. No. 14-1096 JCH/GBW

BNSF RAILWAY COMPANY,

                **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following pretrial motions: (1) *Defendant's Omnibus Motion in Limine* [Doc. 55], (2) *BNSF Railway Company's Motion in Limine on Plaintiff's Ballast Related Claims and Claims of Negligent Track Inspection* [Doc. 66], and (3) *Defendant's Motion to Strike Previously Undisclosed Fact Witnesses* [Doc. 107].

**I.    Defendant's Omnibus Motion in Limine**

This motion addresses a potpourri of potential evidentiary issues. However, Plaintiff has responded to only one of these: Defendant's contention that the Court should preclude Plaintiff from presenting evidence of subsequent remedial measures (outside the limited purposes set forth in Fed. R. Evid. 407), including evidence that the surface condition of the Broncho Siding, where Plaintiff's injury occurred, has been changed, modified, or improved since the date of his injury. As Plaintiff has declined to respond to the other issues raised in the motion, in accordance with the Local Rules the Court presumes that those portions of the motion are unopposed.

Rule 407 states that it "does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as ... impeachment." Fed. R. Evid. 407. The

impeachment exception to Rule 407 is necessary to prevent litigants from taking "unfair advantage" of the Rule by adopting a position at trial that is inconsistent with their previous decision to take remedial measures after the accident. *Minter v. Prime Equipment Co*., 451 F.3d 1196, 1212-13 (10th Cir. 1996) (citing *Wood v. Morbark Indus., Inc*., 70 F.3d 1201, 1208 (11th Cir. 1995) (evidence of subsequent modifications can be introduced to rebut testimony that "left the jury with the impression that [the defendant] had made no modifications to the [product]")). *See also In re Air Crash Disaster*, 86 F.3d 498, 531 (6th Cir.1996) (evidence of subsequent design changes to correct deficiencies is admissible to rebut a witness's claim that the product was "state of the art"); *Polythane Sys., Inc. v. Marina Ventures Int'l., Ltd*., 993 F.2d 1201, 1210-11 (5th Cir. 1993) (evidence of subsequent modifications is admissible to impeach testimony that the product was "one of the strongest in the world").

However, the impeachment exception, however, threatens to swallow the rule and therefore must be applied narrowly. *Minter*, 451 F.3d at 1212. Applied loosely, "any evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony." *Id*. at 1213 (quoting *Complaint of Consolidated Coal Co*., 123 F.3d 126, 136 (3d Cir. 1997)) (emphasis and internal quotation marks omitted). In *Probus v. K-Mart, Inc*., 794 F.2d 1207, 1210 (7th Cir. 1986), the court explained:

> It is undoubtedly true that evidence of subsequent remedial measures can be said to contradict, and hence, in a sense, 'impeach' a defendant's contention that he was exercising due care or that materials used in the manufacture of a product were appropriate for their intended application. Yet allowing that and no more to satisfy the impeachment exception would elevate it to the rule.

As a result, the impeachment exception has been limited to evidence of subsequent remedial measures that is "necessary to prevent the jury from being misled." *Wood*, 70 F.3d at 1208. *See also Minter*, 451 F.3d at 1213; *Complaint of Consolidated Coal Co*., 123 F.3d at 136 ("[T]he

evidence offered for impeachment must contradict the witness's testimony directly."); *Harrison v. Sears, Roebuck & Co.*, 981 F.2d 25, 31 (1st Cir. 1992) (noting that the impeachment exception requires "a great[ ] nexus between the statement sought to be impeached and the remedial measure").

The Court cannot evaluate whether or not the impeachment exception to Rule 407 applies until presented with the evidence at trial. Therefore, the Court takes the matter under advisement.

## II. BNSF's Motion in Limine On Plaintiff's Ballast-Related Claims and Claims of Negligent Track Inspection

The Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 et seq., renders railroads liable for employees' injuries or deaths "resulting in whole or in part from [carrier] negligence." § 51. The FELA should be construed liberally to effectuate congressional intent. *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 562 (1987). While a plaintiff must prove "the common law elements of negligence [to prevail in a FELA case], including foreseeability, duty, breach, and causation," *Fulk v. Illinois Cent. R.R. Co.*, 22 F.3d 120, 124 (7th Cir.1994), a "relaxed standard of causation applies under FELA." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691-92, 131 S.Ct. 2630, 2636 (2011).

"Liability under FELA is limited in these key respects: Railroads are liable only to their employees, and only for injuries sustained in the course of employment. FELA's language on causation, however, 'is as broad as could be framed.'" *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 691 (2011) (quoting *Urie v. Thompson*, 337 U.S. 163, 181 (1949)). Juries in such cases are properly instructed that a defendant railroad "caused or contributed to" a railroad worker's injury "if [the railroad's] negligence played a part—no matter how small—in bringing about the injury." *Id*. at 705. The FELA "vests the jury with broad discretion to engage in common sense

3

inferences regarding issues of causation and fault." *Harbin v. Burlington N.R.R. Co.*, 921 F.2d 129, 132 (7th Cir. 1990).

Defendant asks the Court to preclude Plaintiff from making reference to any industry standard that has not been promulgated by the Federal Railroad Safety Act. In particular, Defendant seeks to exclude standards from the American Society of Testing and Materials (ASTM) that have been discussed by Plaintiff's liability expert, Russel Kendzior. Defendant's reasoning is that these standards have been "preempted" by federal law.[1] Defendant then cites FRSA promulgated regulations aimed at reducing train derailments to argue that Congress has occupied the field of railroad safety. *See* Doc. 66 at 3-4. However, Defendant does not cite any regulations that bear on the issue at hand, which is not train derailments, but rather the safety of railroad employees climbing in and out of trains.

In his response, Griswold spends many pages explaining why his Federal Employer's Liability Act ("FELA") claim for negligence is not preempted by the Federal Railroad Safety Act ("FRSA"). While that is true, that is not the argument that Defendant is making in his motion. The question is rather what evidence can be offered to demonstrate that BNSF did not meet the standard of care. Griswold cites decisions from various federal Circuit Courts of Appeals and District Courts that have held that while a violation of regulations under the Occupational Safety

---

[1] Preemption is not the right concept in this scenario, because preemption applies when federal law occupies the field such that it invalidates state law—and the ASTM standards are not state law. Federal preemption of state law is based on the Supremacy Clause of the Constitution. U.S. Const., art. VI, cl. 2. The Supremacy Clause invalidates state laws which "interfere with, or are contrary to," federal laws. *Gibbons v. Ogden*, 9 Wheat. 1, 211, 6 L.Ed. 23 (1824). Preemption can take one of three forms: (1) express preemption, where Congress passes a statute that by its express terms preempts state law; (2) implied preemption, where federal legislation is sufficiently comprehensive to make reasonable the inference that Congress left no room for supplementary state regulations; and (3) actual preemption, where Congress speaks neither expressly nor impliedly of preemption, but state law is nevertheless preempted to the extent it actually conflicts with a federal statute or rule. *International Paper Co. v. Ouellette*, 479 U.S. 481, 491, 107 S.Ct. 805, 811, 93 L.Ed.2d 883 (1987).

and Health Act of 1970 ("OSHA") cannot be the basis for a claim of negligence per se, it can be evidence the jury may consider when determining whether the railroad violated the standard of care.

The Court agrees with Griswold that evidence of the ASTM standards is admissible for the limited purpose of suggesting safety standards in certain industries in the United States. Thus, they are admissible for the limited purpose of illustrating BNSF's standard of care. Kendzior's testimony regarding these standards can be admitted into evidence with a limiting instruction making it clear that the ASTM standards are not binding on BNSF in this lawsuit, but may be considered by jury, along with all the other evidence in this case, in determining whether or not BNSF provided a reasonably safe place to work.

This motion in limine will be denied.

**III.    Defendant's Motion to Strike Previously Undisclosed Fact Witnesses**

BNSF moves to strike two witnesses, Audie Martin and Joseph Norris, on the grounds that their disclosure as potential trial witnesses is untimely. Griswold identified the two witnesses for the first time on May 1, 2018, just one week prior to the start of jury selection. *See* Doc. 102. Griswold states that these witnesses "ha[ve] information about the area in which Plaintiff was injured." *Id*. The parties agree that these witnesses were identified for the first time during the deposition of BNSF employee Jeffrey Scott Mayfield on January 27, 2017, just two and a half weeks before the prior trial setting of February 13, 2017. At a call of the calendar held on February 2, 2017, the Court informed the party that it would be resetting the trial for May 8, 2017. Doc. 75. Accordingly, Griswold provided BNSF with a Trial Witness List, which included neither Martin nor Norris. Doc. 107-2. At no point did Plaintiff move to amend the Pretrial Order

to include these witnesses, request to take their depositions (which would not have been unusual, given the parties' history of taking late depositions in this case), or notify BNSF that they would be trial witnesses until just one week prior to the May 8, 2017 trial setting.

Griswold contends that the late disclosure should not bar him from calling these witnesses at trial because BNSF should have identified these witnesses in its Rule 26 initial disclosures as well as in response to Griswold's discovery requests. BNSF argues that the disclosure of these witnesses is untimely. BNSF further asserts that these witnesses, who submitted and responded to a report requesting smaller ballast near the site of Griswold's injury, do not have information relevant to Griswold's claim because (1) the report occurred after the incident at issue, and (2) Griswold stated in his deposition that he did not experience any footing problems on the ballast on the day in question. This, argues BNSF, explains its failure to identify these witnesses in discovery.

The Court will not permit Griswold to call either Audie Martin or Joseph Norris as a witness at trial. It is clear that Plaintiff knew of these witnesses for over three months before finally identifying them to BNSF as potential witnesses.[2] As such, he has identified them too late. The motion to strike will be granted.

**IT IS THEREFORE ORDERED** that:

(1) *Defendant's Omnibus Motion in Limine* [Doc. 55] is **GRANTED IN PART** as unopposed, with the exception of the issue relating to subsequent remedial measures, which will be addressed at trial;

(2) *BNSF Railway Company's Motion in Limine on Plaintiff's Ballast Related Claims and Claims of Negligent Track Inspection* [Doc. 66] is **DENIED** as explained herein; and

---

[2] The Court's pretrial instructions require parties to identify witnesses no later than 15 working days before trial. Doc. 76-1.

(3) *Defendant's Motion to Strike Previously Undisclosed Fact Witnesses* [Doc. 107] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**